**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. Action No. 16-00033 (SDW) |
| Plaintiff, | **OPINION** |
| v. | April 13, 2022 |
| RONALD SANDERS, | |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is *pro se* Defendant Ronald Sanders' ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On July 14, 2014, Union Police officers conducted a traffic stop of Defendant's vehicle after discovering it was registered to an individual with a suspended driver's license, and the driver, later confirmed to be Defendant, matched the individual's description. (*See* Presentence Report ("PSR"), dated June 17, 2016, at ¶ 11.) During questioning, Defendant gave a false name to the police officers, but later admitted his identity after an officer discovered Defendant's driver's license during a safety-related pat-down. (*Id.* at ¶ 12.) The officers spoke with a passenger in Defendant's vehicle and, while doing so, noticed a clear bag with bullets on the floor behind the passenger's seat. (*Id.*) The officers searched the vehicle with Defendant's consent and found a

loaded 9mm-caliber semi-automatic firearm, eleven hollow-point bullets, and a full metal jacket bullet. (*Id.* at 13.) The officers also found 180 wax-paper folds containing a substance subsequently confirmed to be heroin, $4,637 in cash, and a digital scale. (*Id.*) Later, in a voluntary, videotaped statement, Defendant admitted that the items were his, he possessed the heroin for distribution, and he had given the police a false name. (*Id.* at 14.)

On March 24, 2016, Defendant appeared before the Honorable Jose Linares, C.U.S.D.J., and pleaded guilty to one count of a three-count indictment. (*See generally* D.E. 54-1 ("Plea Hearing Tr.") at 2–21.)[1] Defendant entered his plea pursuant to a written Plea Agreement and admitted knowingly possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g). (*Id.*; *see also* D.E. 30.) Defendant's Plea Agreement included an attached schedule that delineated factual stipulations and a waiver of his right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in accepting any of the factual stipulations contained in the agreement. (*See* D.E. 30 at 8.) During the plea hearing, the court thoroughly reviewed the contents and terms of the plea agreement, and Defendant confirmed that he had read it, discussed it with his attorney, and understood its terms and consequences— including the appellate waiver. (*Id.* at 7:9–19:12.) The court also confirmed that Defendant was entering the plea without having been coerced into it, and under his own free will. (*Id.* at 9:22– 10:2.) Defendant also submitted an Application for Permission to Enter a Plea of Guilty ("Rule 11 Form") in which he acknowledged that he understood that the sentencing court had sole discretion over imposing a sentence, the Sentencing Guidelines were advisory only, he had no right to withdraw his plea if anyone's estimate of the expected sentence was inaccurate. (*See* D.E.

---

[1] Citations to D.E. 54-1 contain the D.E. page number (instead of the original transcript page number), and the corresponding transcript line(s).

29 at ¶¶ 25, 27, 33.)  He also waived his right to appeal on the grounds that the court erred in accepting any factual stipulations in the Plea Agreement.  (*See* D.E. 29 at ¶ 39.)  At the plea hearing, the court accepted Defendant's plea after it found that a factual basis had been established and Defendant knowingly and voluntarily decided to enter the plea.  (Plea Hearing Tr. 19:13–17.)

On October 14, 2016, after conducting a thorough analysis of Defendant's prior criminal history and considering Defendant's crime of conviction and the totality of the case, the sentencing court imposed a 110-month sentence of incarceration and a three-year term of supervised release. (D.E. 25-4 ("Sentencing Tr.") Oct. 14, 2016, at 4:25–44:15.)[2]  The court carefully considered the PSR, which detailed Defendant's criminal history, including arrests, convictions, and pending charges; noted the maximum statutory limit for a violation of 18 U.S.C. § 922(g) (ten years); and calculated that Defendant had a total offense level of twenty-five and a criminal history category of six, which resulted in an advisory Sentencing Guidelines range of 110 to 120 months.  (PSR at ¶¶ 35–82, 110–11.)  The court heard extensive arguments from Defense counsel and Defendant, who contended that the § 3553(a)[3] factors, policy statements in the Sentencing Guidelines, Defendant's mental and emotional conditions, Defendant's family ties, circumstances surrounding the motor vehicle stop, Defendant's willingness to accept responsibility, and Defendant's assistance with the surrender of two other firearms by another person all favored a downward departure from the Sentencing Guidelines.  (*See* Sentencing Tr. at 8:10–30:18.)  Conversely, the Government argued that a downward departure would not be appropriate, and that Defendant should receive a 120-month sentence due to his criminal history, the seriousness of the crime, and the need for deterrence.  (*Id.* at 30:21–35:10.)  After considering the arguments, the court found

---

[2] Citations to D.E. 25-4 contain the D.E. page number (instead of the original transcript page number), and the corresponding transcript line(s).

[3] 18 U.S.C. § 3553(a)(1).

that a 110-month sentence would appropriately account for "the totality of this case and the nature

of the crime, the seriousness of the crime, [and] the undeniable recidivism of [Defendant]," but

also give Defendant the benefit of the doubt that "perhaps some level of leniency should be

appropriate . . . by virtue of his remorse and his steps with the GED and the vocational programs,

. . . , and perhaps he has taken steps towards the right direction."  (*Id.* at 36:17–44:17.)

Defendant submitted a letter to the Court on October 6, 2017, which the Court later clarified

was intended as a § 2255 Petition challenging his sentence.  (*See* D.E. 42, 44, 45; *see also Ronald

Sanders v. United States*, No. 2:18-cv-11044 (KSH) ("Civ. No. 18-11944), D.E. 1-1, 1-3.)  On

August 31, 2021, after considering briefing from Defendant and the Government, the Honorable

Katherine S. Hayden, U.S.D.J., issued an opinion and order denying Defendant's Petition.  (Civ.

No. 18-11944, D.E. 46, 47.)  The Court specifically noted that Defendant's "sentencing claims

[were] plainly meritless," and found "no conceivable error on how Judge Linares arrived at his

low-end 110-month sentence."  (Civ. No. 18-11944, D.E. 46 at 6.)

On September 5, 2021, Defendant filed an administrative relief request with the Warden at

Federal Correctional Institution Cumberland ("FCI Cumberland") in which he sought

compassionate release and argued that his Willis credits are not properly accounted for, the

sentencing court overstated his criminal history during sentencing, the government did not prove

the necessary elements of his sentencing by a preponderance of the evidence, the Bureau of Prisons

("BOP") has not provided him with adequate educational or vocational training, and his sentence

should be reduced because he helped with the surrender of two firearms, *inter alia*.  (*See* D.E. 54-

1 at 23–25.)  The warden denied Defendant's request on September 21, 2021.  (*See* D.E. 54-1 at

27.)  On October 18, 2021, Defendant filed the instant Motion.[4]

---

[4] On January 6, 2022, after Defendant had already submitted the instant Motion and the Government had already
submitted an Opposition brief, Defendant submitted a letter to the Court, (*see* D.E. 55), in which he requested that the

## II.  <u>DISCUSSION</u>

When contemplating a Motion for Compassionate Release, courts follow a specific analytical framework.  Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence.  The statute provides, in relevant part, that:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).  Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release."  *Epstein*, 2020 WL 1808616, at *2 (citing 18 U.S.C. § 3582(c)(1)(A)).

---

Court appoint an attorney to assist him with the Motion.  Because the Motion was already filed, briefing was already submitted and under consideration by the Court, and the Court discerned no need for an appointed attorney because Defendant quite capably put forth detailed, cogent arguments supporting his Motion, the Court denies Defendant's request.  *See generally Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993) (affirming that courts have discretion concerning whether to appoint counsel, and detailing factors courts may consider when determining whether it is appropriate to appoint counsel).

First, "a defendant seeking a reduced sentence must ask the [BOP] to do so on his or her behalf and either . . . wait thirty days for the BOP to respond or . . . exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  Then, a court may reduce a defendant's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[5] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (quoting *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)).

Defendant submits several arguments in the instant Motion, including arguments concerning issues unrelated to compassionate release.  (*See* D.E. 52.)  This Court considers the arguments in turn and finds each unpersuasive.

### A.  Procedural Prerequisite

The first consideration is whether Defendant has satisfied the procedural prerequisite in § 3582(c)(1)(A).  *See Epstein*, 2020 WL 1808616, at *2.  On September 5, 2021, Defendant submitted an administrative request for compassionate release to Warden Beard of FCI Cumberland in which Defendant put forth the primary arguments he now submits to this Court. (*See* D.E. 54-1 at 23–25).  On September 21, 2021, Warden Beard subsequently denied

---

[5] When a defendant seeks release based on reasons other than medical (subsection A), age-related (subsection B), or family (subsection C) issues, the Sentencing Commission's relevant policy statement allows consideration of "other reasons," provided that, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13, cmt. n.1(D).

Defendant's request.  (*See* D.E. 54-1 at 27.)  On October 18, 2021, Defendant filed this Motion in accordance with proper procedure.  Thus, the analysis continues to the next step.

### B.  Compelling and Extraordinary Reasons for Compassionate Release

Once the procedural prerequisite is satisfied, a defendant bears the burden of demonstrating that there are compelling and extraordinary reasons for compassionate release.  *See Epstein*, 2020 WL 1808616, at *2.  In addition to demonstrating compelling and extraordinary reasons for sentence reduction, a defendant must show that any reduction comports with Sentencing Commission policy and the § 3553(a) factors support a reduction.  *See Sparrow*, WL 4364328, at *2.

Here, Defendant puts forth several arguments that he asserts demonstrate compelling and extraordinary reasons for sentence reduction and comport with Sentencing Commission policy. Specifically, Defendant contends that he should receive a reduction in sentence because (1) the BOP has not properly accounted for his Willis credits; (2) the sentencing court incorrectly considered his criminal history; (3) the Government failed to prove the necessary elements of his sentence by a preponderance of the evidence; (4) per U.S.S.G.[6] Section 5K2.16, he provided assistance to law enforcement in their recovery of two firearms; (5) the BOP has not provided him with adequate educational or vocational training; and (6) per the U.S.S.G. Section 5K2.0 catchall provision, the previous arguments in combination have the cumulative effect of making his case exceptional.  Defendant also submits an analysis of the § 3553(a) factors, which he contends supports a sentence reduction.  After analyzing each of Defendant's lengthy and vehement arguments, this Court finds that the arguments do not provide compelling and extraordinary

---

[6] United States Sentencing Commission Guidelines ("U.S.S.G.").

justification for a sentence reduction, the arguments in combination also fall short of compelling and extraordinary, and the § 3553(a) factors likewise do not tilt the scale in Defendant's favor.

### a. Willis Credits

Defendant asserts that the BOP has calculated and applied his Willis credits[7] incorrectly, and that the incorrect application serves as an extraordinary and compelling reason to release him. (*See* D.E. 52 at 1–3.)  While Defendant presents an extensive argument regarding the calculation of credits and attempts to turn that argument into an argument for compassionate release, the contention centers on challenging the BOP's execution of his sentence—not whether there are extraordinary and compelling reasons for release.  (*See id.*)  "The authority to calculate a federal prisoner's period of incarceration for a federal sentence imposed and to provide credit for time served is delegated to the Attorney General, who acts through the Federal [BOP]." *United States v. Vidal*, 647 Fed. Appx. 59, 60 (3d Cir. 2016) (citing *United States v. Wilson*, 503 U.S. 329, 334–35 (1992)).  "[A] challenge to [a] sentence as executed by the prison and parole authorities . . . should be made on a petition for a writ of habeas corpus, 28 U.S.C. § 2241." *United States v. Grimes*, 641 F.2d 96, 99 (3d Cir. 1981).  That type of petition should be filed in the district in which the defendant is confined.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."); *see*

---

[7] Willis credits are a specific type of custody credits related to time spent in non-federal custody.  *See Aponte-Cruz v. Zickefoos*, No. 11–1531 (RBK), 2012 WL 5622123, at *4 (D.N.J. Nov. 15, 2012).

> Pursuant to *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971), as written into the relevant BOP Program Statement, where a federal sentence is imposed to run concurrently to a state sentence, and the federal sentence is to run longer than the state sentence (not counting any credits):  "Prior custody credits shall be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal."

*Id.* (quoting P.S. 5880.28(2)(c) (emphasis added)).

*also Yi v. Maugans*, 24 F.3d 500, 503 (3d Cir. 1994) ("A district court's habeas corpus jurisdiction is territorially limited and extends only to persons detained and custodial officials acting within the boundaries of that district." (citing U.S.C. § 2241(a))).

Here, Defendant's claim about Willis credits does not fall within the confines of the compassionate release framework and should instead be addressed in a § 2241 petition. Further, Defendant is presently incarcerated in FCI Cumberland in the District of Maryland, thus that district has jurisdiction over any § 2241 petition Defendant may seek to file. *See Yi*, 24 F.3d at 503. In sum, this issue is not appropriate in a Motion for Compassionate Release and this Court does not have jurisdiction to consider the issue.

**b. Length of Sentence and Criminal History**

Defendant raises concerns about the length of his sentence and contends that his criminal history score and offense level "substantially over-represent[] the seriousness of [his] criminal history." (D.E. 52 at 5.) The PSR detailed Defendant's criminal history, including arrests, convictions, and pending charges; noted the maximum statutory limit for a violation of 18 U.S.C. § 922(g) (ten years); and calculated that he had a total offense level of twenty-five and a criminal history category of six, which resulted in an advisory Sentencing Guidelines range of 110 to 120 months. (PSR at ¶¶ 35–82, 110–11.) After conducting a thorough analysis of Defendant's prior criminal history and considering his crime of conviction and the totality of his case, the sentencing court imposed a 110-month sentence of incarceration and a three-year term of supervised release. (D.E. 25-4 ("Sentencing Tr.") Oct. 14, 2016, at 4:25–44:15.) Defendant argues that his prior qualifying drug offense convictions, however, "effectively increased [his] sentence by [forty to fifty] months," (D.E. 52 at 5), which in turn unfairly "lump[ed] [him] in the same category as felons with an extensive background of violent and/or assaultive convictions and also felons with

convictions for trafficking extensive drug quantities," (*Id.* at 4).  Defendant asks this Court to consider that his crimes were not violent crimes and reduce the length of his sentence.

Defendant does not contend that his offense level and criminal history were inaccurately calculated.  In fact, the sentencing court considered Defendant's arguments in favor of a downward departure, and carefully crafted a sentence at the lowest level of the advisory range, which the court noted "provides appropriate punishment, [and] should provide appropriate deterrence.  [The sentence] does protect the public for a long period of time from this type of activity and hopefully gives the [D]efendant time to straighten out his life." (Sentencing Tr. at 44:7–11.)  This Court sees no reason to disturb the sentencing court's cogent findings.

Furthermore, Defendant's request is inappropriate in a Motion for Compassionate Release.  While "[t]he First Step Act added the procedure for prisoner-initiated motions while leaving the rest of the compassionate-release framework unchanged," it did not provide a new avenue for reducing the length of lawfully imposed sentences.  *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021).  The Third Circuit has confirmed that "[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." *Id.* at 260–61.  Here, Defendant argues that the duration of his sentence is excessive because his many prior crimes were non-violent, but the enhancements due to his prior convictions catapulted him to a level on par with violent offenders.  (*See* D.E. 3–5.)  Defendant's contention, however, cannot serve as a basis for compassionate release because the sentencing court issued a lawful sentence within the statutory limit and the sentencing range—the bottom of the range, in fact—and, in accordance with *Andrews*, there is no compelling or extraordinary reason to disturb the court's findings.  12 F.4th at 260–61.  A compassionate release motion cannot be used as an end-around appeal of the length of a lawfully imposed sentence.

### c.  Sentencing Elements and Preponderance of Evidence

Defendant argues that "[t]he fact that [he] agreed that [he] possessed a firearm in connection with another felony offense within [his] plea agreement does not excuse the prosecutor from meeting" the preponderance of evidence burden of proof to attain the four-point enhancement he received for possessing a firearm in connection with another felony offense.  (D.E. 52 at 5.)  Defendant further asserts that the burden of proof that prosecutors must meet to prove the need for sentencing enhancements should be raised to a clear and convincing standard because the "enhancement significantly increased [his] sentence."  (*Id.* at 6.)  In support of his argument, Defendant alleges that while he had a firearm and "had drugs on his person" and in his car, he was "not able to readily access the firearm because it was buried in the trunk of [his] car."  (*Id.* at 8.)  Thus, Defendant contends, the enhancement should not have applied because the firearm was only "coincidentally near the drugs that were buried even deeper in the trunk of my car under the spare tire."  (*Id.*)

Defendant's arguments are unavailing and misplaced in this Motion.  Defendant seeks to reduce his sentence and revise the burden of proof that prosecutors must meet when arguing for enhancements, yet Defendant conveniently ignores the fact that he pleaded guilty and signed a Plea Agreement that renders his arguments moot.  "[T]o the extent that [a d]efendant mounts post-judgment collateral attacks on his sentence and seeks to vacate, set aide, or correct his sentence, the proper venue is a habeas petition under 28 U.S.C. § 2255."  *United States v. Craft*, Crim. No. 18-0085, 2021 WL 5448788, at 5 (D.N.J. Nov. 22, 2021.)  Nonetheless, Defendant conveniently ignores the fact that he stipulated in the Plea Agreement to waive his rights to "an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255," and he further ignores the fact that these arguments have already been addressed in the § 2255 petition he already filed—and which was

adjudicated by this Court.  (D.E. 30 at 3; *see also* Civ. No. 18-11944, D.E. 46, 47.)  "The right to appeal in a criminal case is among those rights that may be waived." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983), *abrogated on other grounds by Garza v. Idaho*, 139 S. Ct. 738, 203 L. Ed. 2d 77 (2019).  Courts will "enforce such waivers, provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." *Id.* at 237 (citing *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001)).  Here, Defendant knowingly and voluntarily entered the plea, and does not argue that there has been a miscarriage of justice.  The plea colloquy satisfied the burden of proof required for an enhancement; even if it had not, however, his argument concerning the placement of the drugs and firearm in his car is ineffective and supports the prosecution's contentions.  This Court therefore recognizes and enforces the waiver of appeal in Defendant's plea agreement and will not consider this argument in relation to the instant Motion.

### d.  U.S.S.G. Section 5K2.16

Defendant next posits that because he assisted law enforcement with the surrender of two illegal firearms, his "sentence [should] be reduced under 5K2.16 for [his] voluntary surrender of an offense."  (D.E. 52 at 10.)  To support his contention, Defendant explains that "after informing the officers that all of the illegal things they discovered in the trunk of [his] car were [his]," they asked for his assistance with solving murders or taking guns off the streets; so, he helped an acquaintance arrange for the surrender of a handgun and an assault rifle.  (D.E. 52 at 9.)  This assistance, Defendant argues, is an extraordinary and compelling reason to grant him early release.

Defendant's contention is unsupported and does not have a basis in compassionate release.  U.S.S.G. Section 5K2.16 provides:  "If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and

if such offense was unlikely to have been discovered otherwise, a downward departure may be warranted." Here, Defendant offered information that was helpful to law enforcement, which is laudable, but the information did not directly qualify under the 5K2.16 provision. Defendant did not directly accept responsibility for the offense (it was not his to accept; the two firearms belonged to another person), and there is no contention that the offense was unlikely to have been discovered.

Additionally, Defendant raised this issue before the sentencing court, (*see* Sentencing Tr. at 25:14–20), and again in the § 2255 petition he previously filed with this Court, (*see* Civ. No. 18-11944, D.E. 1 at 3). The sentencing court considered this argument in light of the § 3553(a) factors, including Defendant's crime, history, and characteristics, (*see* Sentencing Tr. at 36:17 to 43:17), and the Court again considered this argument in response to Defendant's § 2255 petition, (*see* Civ. No. 18-11944, D.E. 46 at 6). This issue has been addressed twice already by this Court and it has no basis in compassionate release. There is no extraordinary or compelling reason to reduce Defendant's sentence based on his assistance in arranging the surrender of two firearms by another person. Moreover, the sentencing court issued a prison term that was at the bottom of the advisory Sentencing Guidelines after noting that Defendant had demonstrated "remorse and [he had taken] steps with the GED and the vocational programs, et cetera, and perhaps he ha[d] taken steps towards the right direction." (Sentencing Tr. at 44:1–6.) While the sentencing court's and reviewing court's consideration may not have satisfied Defendant, this Court is satisfied that this issue has been adequately addressed and does not serve as an extraordinary or compelling basis for compassionate release.

### e.   Educational and Vocational Training and U.S.S.G. Section 1B1.13

Defendant next asserts that his sentence should be reduced because the BOP has not provided him with adequate "educational or vocational training in the most effective manner" in

accordance with U.S.S.G. Section 1B1.13.  (D.E.52 at 12–15.)  Specifically, Defendant claims that the lack of educational and vocational programs due to impacts from COVID-19 has prevented him from earning credits under the First Step Act—credits that would potentially shorten his supervised release and increase his time in a halfway house.[8]  (*Id.* at 13–14.)  Defendant argues that the lack of adequate programs serves as an extraordinary and compelling basis for compassionate release because it hinders rehabilitation.  (*Id.* at 14–15.)

The arguments put forth by Defendant fail to meet the standard for compassionate release for several reasons.  First, this issue pertains to the execution of Defendant's sentence, thus it should be raised in a petition for writ of habeas corpus, 28 U.S.C. § 2241, as previously discussed in this opinion.  *See supra* Part II.A.  In accordance with *Grimes* and *Padilla*, this Court does not have jurisdiction to consider this issue.  *See Grimes*, 641 F.2d at 99; *Padilla*, 542 U.S. at 447.

Next, even if this Court were to consider this issue, Defendant couches his argument in terms of the requirements set forth in U.S.S.G. Section 1B1.13, and in particular Application Note 3; but that provision does not aid Defendant's request because it provides that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  That provision torpedoes Defendant's argument that the lack of availability of vocational and educational programs is an extraordinary and compelling basis for a reduction in sentence.  Defendant may have intended to rely on Application Note 1(D), but that provision is of no assistance either because it provides for sentence reduction if "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an

---

[8] The BOP may, where appropriate, offer programs such as vocational training, occupational training, substance abuse treatment, and family/marital needs programs.  *See generally Needs Assessment in the Federal Bureau of Prisons* (Aug. 2020), https://www.bop.gov/inmates/fsa/docs/fsa_needs_assessment.pdf.

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 at n.1(D) (emphasis added).  That provision requires the Director of the Bureau of Prisons to find that there is an extraordinary and compelling reason for Defendant's reduction in sentence.  However, that has not happened in this matter, as evidenced by Warden Beard's finding that Defendant does "not meet the criteria for consideration for a [reduction in sentence] at this time."  (D.E. 54-1 at 27.)

Finally, while the BOP may be experiencing challenges maintaining full availability of educational and vocational programs due to implementation issues caused by COVID-19, Defendant's "Individualized Needs Plan—Program Review" demonstrates that Defendant has taken multiple course offerings within the past year.  (*See* D.E. 52-2 at 3.)  Defendant's interest in these programs is commendable and the Court encourages him to continue his rehabilitation efforts.  But the fact that he has taken some courses demonstrates that even with the availability issues that the BOP has faced due to COVID-19, there have been opportunities for Defendant to participate in classes and programs.  While any temporary unavailability may have caused some hardship to Defendant, similar hardships have been experienced throughout society and do not present an extraordinary or compelling basis for compassionate release.

### f.   U.S.S.G. Section 5K2.0 Catch-all Provision

Defendant next advances the argument that, per the U.S.S.G. Section 5K2.0 catch-all provision, he should receive a reduction sentence because, while each of the aforementioned arguments may not individually rise to a level warranting a sentence reduction, in combination the arguments have the cumulative effect of making his case exceptional and warranting such a reduction.  (D.E. 52 at 38–39.)  The 5K2.0 provision elucidates grounds that a sentencing court may consider for departures—upward or downward—from the Sentencing Guidelines range.  With

that provision in focus, Defendant's argument misses the mark for several reasons.  First, the provision on which Defendant relies relates to a sentencing court's evaluation of whether a departure from sentencing guidelines is warranted—not to this Court's evaluation of whether extraordinary and compelling reasons exist to reduce a defendant's sentence.  Second, the sentencing court already considered Defendant's catch-all departure argument and rejected it. (Sentencing Tr. 39:8–40:11.)  And finally, the arguments themselves—individually and collectively—do not demonstrate any extraordinary or compelling reason to upend the sentencing court's findings.  Defendant has failed to present any unconsidered information or any faulty analysis by the sentencing court.  The court carefully considered each of the aforementioned arguments individually and collectively and devised an appropriate sentence.  This Court therefore will not disturb the court's reasonable findings.

### g.  § 3553(a) Factors

Because Defendant has not met his burden of demonstrating compelling and extraordinary reasons that support a reduction in sentence and has not met his burden of showing Sentencing Commission policy support, an analysis of the § 3553(a) factors is unwarranted.  However, in the interest of thoroughness, this Court submits that even if Defendant had presented extraordinary and compelling reasons for release, this Court would still deny his motion because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against his release.

Defendant argues that the nature and circumstances of the offense support his release because the police search of his car was improper.  (D.E. 52 at 15–19.)  Defendant misses the mark with this argument because his contention concerns law enforcement's conduct in gathering evidence, yet he pleaded guilty and stipulated that he committed the crime, and even asserted in this Motion that he "agreed that [he] possessed the firearm in connection with another felony

offense," and he "inform[ed] the officers that all of the illegal things they discovered in the trunk of [his] car were [his]."  (D.E. 52 at 5, 9.)  The nature and circumstances of the offense are not lessened by Defendant's perception of how law enforcement conducted the search, or whether he believes the offense was serious.  Defendant is serving a 110-month term for being a felon in possession of a firearm.  Defendant possessed a loaded, semi-automatic handgun with twelve rounds of ammunition, eleven of which were hollow-point bullets, and the weapon was connected with drug distribution.  (*See* Sentencing Tr. 34:20–35:3.)  The 110-month sentence that the sentencing court issued appropriately reflected the seriousness of the offense.

Defendant further argues that his history and characteristics support a sentence reduction. However, prior to this conviction, Defendant has been convicted as an adult fourteen separate times, primarily for narcotics-related offenses, and has violated parole and escaped multiple times from halfway houses, as well.  *See* PSR ¶¶ 46–59.  While this Court recognizes that Defendant has experienced numerous personal hardships in his life, it cannot disregard his prior offenses when considering his history and characteristics.  Defendant's lengthy criminal history is troubling and does not suggest a concerted effort at rehabilitation, although this Court hopes for that outcome. A reduced sentence would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Furthermore, it would also create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").

In sum, the supportive reasons set forth on the record at the time of sentencing are still applicable. Thus, even if Defendant's Motion had survived the preceding analyses, this Court would deny release.

### III.    <u>**CONCLUSION**</u>

For the reasons set forth above, Defendants' Motion for Compassionate Release is **DENIED**.  An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:          Clerk
cc:            Parties